UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| YI ZHANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 1:10-CV-213 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| CITY OF CHATTANOOGA, ) | |
| CITY COUNCIL ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Before the Court are cross-motions for summary judgment. Defendant City of Chattanooga ("City") filed a summary judgment motion and accompanying memorandum (Court File Nos. 12, 14), to which Plaintiff Yi Zhang ("Plaintiff") responded (Court File No. 17). The City replied to Plaintiff's response (Court File No. 19). Plaintiff filed her own motion for summary judgment and accompanying memorandum (Court File Nos. 13, 15), to which the City responded (Court File No. 16). Plaintiff also replied to the City's response (Court File No. 18). The Court has considered these filings, along with accompanying depositions and other discovery materials, in reaching its ruling.

Because Plaintiff has failed to demonstrate that she has been treated differently than similarly situated individuals and the City's decision to deny her a Special Exceptions Permit lacked a rational basis, the Court will **GRANT** summary judgment for Defendant on Plaintiff's federal law claims, and **DENY** Plaintiff's motion for summary judgment. The Court will **REMAND** Plaintiff's state law claims to the Chancery Court for Hamilton County, Tennessee.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

The parties largely do not the dispute the material facts, although they disagree on how those facts should be interpreted. Plaintiff and her husband purchased real property at 4317 Norcross Road ("Norcross Property") in Hixson, Tennessee at a foreclosure sale in May 2009. The Norcross Property is currently a triplex, and Plaintiff and her husband occupy one of the units, renting the other two out to tenants. At the time of the purchase, Plaintiff knew the Norcross Property had been converted from a duplex into a triplex, but was unaware the City of Chattanooga had zoning ordinances specific to duplexes and triplexes.

Duplexes and triplexes are only permitted in certain areas. Although the Norcross Property complied with the R-2[1] zoning restrictions when built, in 1972, the area was rezoned to R-1[2] for residential single family use, which does not permit multiple family dwellings. Because the Norcross Property existed at the time the area was rezoned in 1972, however, the property's otherwise non-conforming status as a triplex was protected–"grandfathered"–under City Code. City Code § 38-541(1).[3] At some point before Plaintiff purchased the property at the foreclosure sale in May 2009, the Norcross Property was vacant for more than 100 consecutive days. This vacancy of

---

[1] Chattanooga City Code identifies a "two-family dwelling" as a permitted use in a R-2 Zone. Chattanooga, TN, City Code § 38-91(2). Triplexes are not permitted in R-2 Zones.

[2] *See id.* at § 38-41.

[3] Although neither party informs the Court when the Norcross Property was converted from a duplex to a triplex, and notwithstanding the fact that triplexes are not permitted in R-2 Zones, the parties appear to agree the Norcross Property was protected under City Code § 38-541(1) when, in 1972, the area in which the Norcross Property is located was rezoned from R-2 to R-1.

more than 100 consecutive days removed the Norcross Property's grandfathered status.[4] Thus, when Plaintiff purchased the Norcross Property, its status as a triplex constituted an illegal non-conforming use under the Chattanooga City Code. After Plaintiff received a letter from the City informing her the Norcross Property had fallen out of compliance with zoning ordinances, she applied in December 2009 to have the property rezoned by the Chattanooga City Council from R-1 to R-3. The City Council denied Plaintiff's request in January 2010.

On February 26, 2010, having had her request for rezoning denied by the City Council, Plaintiff applied for a Special Exceptions Permit for a two-family dwelling in the R-1 Residential Zone.[5] Created in November 2007, the Special Exceptions Permit was enacted to "provide relief to property owners of certain two-family dwellings which, under current zoning, could only be used as single-family residences."[6] City Code § 38-524(1). To be considered for a Special Exceptions Permit, a structure must meet four requirements:

> (a) One duplex for each Special Exceptions Permit, not multiple structures.
> (b) Two-family dwellings constructed with a building permit and/or constructed on a lot of Record.

---

[4] *See* City Code § 38-541(2) ("If . . . the non-conforming use of [a building existing at the time of the passage of an ordinance that made the building non-conforming] is discontinued for 100 consecutive days regardless of the intent of the owner or occupant of such building . . . , every future use of such premises shall be in conformity with the provisions of the Ordinance.").

[5] City Code provides for a number of different Special Exceptions Permits. *See* City Code § 38-521–27. The only one at issue in this case is the Special Exceptions Permit for a two-family dwelling in the R-1 Residential Zone available under City Code § 38-524.

[6] The preamble of the Ordinance creating the Special Exceptions Permit further explains the Permit's purpose. It notes how the City of Chattanooga has gradually rezoned areas from R-2 Residential to R-1 Residential, causing some long-vacated two-family structures in R-2 areas to lose their grandfathered status. Instead of rezoning areas where such structures are found, the Special Exceptions Permit provides a narrow carve-out within R-1 Residential areas. *See* Court File No. 12, Zhang Depo., Ex. 1, p. 1 (Ordinance preamble noting that "reinvestment and redevelopment of specific two-family dwellings in certain areas may be appropriate under limited conditions").

3

> (c) Dwellings that are easily identified as being constructed for two-families. Most often this would be determined by two front doors facing either the same street, or if on a corner, one door facing each street, or by the existence of two electric meters.
> (d) Dwellings that lost nonconforming status due to a rezoning to R-1 Residential through the zoning study process by the City of Chattanooga as determined by the Chattanooga-Hamilton County Regional Planning Agency.

City Code § 38-524(3).[7] Even if a given structure meets one or more of the above criteria, the decision whether to grant a Special Exceptions Permit remains discretionary:

> A Special Exceptions Permit *may* be granted if City Council, after recommendation by Planning Commission, determines that:
> (a) The request is consistent with the adopted plan for the area.
> (b) The request is consistent with the zoning study that rezoned requested property from R-2 Residential and R-3 Residential Zone to R-1 Residential Zone.
> (c) Issuance of a permit will benefit a neighborhood by encouraging an increase in investment in the property.

City Code § 38-524(5) (emphasis added) (internal citations omitted). Before the City Council will consider a Special Exceptions Permit, an applicant must first obtain approval from the Regional Planning Agency ("RPA") and a recommendation from the Regional Planning Commission ("Planning Commission"). Neither the RPA's approval nor the Planning Commission's recommendation binds the City Council.

By April 2010, both the RPA, which examines land use issues but not possible code violations, and the Planning Commission had approved Plaintiff's application for a Special Exceptions Permit. After approval from the RPA and the Planning Commission but before the City Council considered Plaintiff's application, a number of steps were taken. First, the City placed a

---

[7] Plaintiff contends the Norcross Property is eligible for a Special Exceptions Permit under these criteria because, notwithstanding its current status as a triplex, it was originally constructed as a two-family dwelling (Court File No. 15, p. 2). The City disagrees, arguing the Special Exceptions Permit applies only to duplexes, not triplexes (Court File No. 14, p. 6). Although not binding on the City Council, the Regional Planning Commission determined the Norcross Property complied with these criteria. *See* Court File No. 12, Zhang Depo., Ex. 3.

4

sign at the Norcross Property notifying neighbors of Plaintiff's Special Exceptions Permits application. Second, City Council members Jack Benson and Sally Robinson[8] met with Plaintiff to discuss her application. Plaintiff communicated to these City Council members her plans for the Norcross Property, which did not include renovating the property, but did include continuing to rent it out. Although Plaintiff informed City Council members she and her husband intended to continue living at the Norcross Property, some Council members did not believe her; Plaintiff stated at her deposition she and her husband indeed intended to move out if the Special Exceptions Permit were granted (Court File No. 12, Zhang Depo., p. 40).

On May 11, 2010, the City Council considered Plaintiff's application at a public hearing. At that hearing, Plaintiff's counsel presented Plaintiff's application. Plaintiff's counsel informed the City Council that both the RPA and Planning Commission had approved Plaintiff's application. Some of Plaintiff's neighbors on Norcross Road, through counsel, opposed Plaintiff's application, attributing to the Norcross Property a decrease in property value for adjacent properties as well as problems that included "a loose pit bull, junk cars, dope, and domestic violence," and the fact that police had been out to the Norcross Property "many times" (Court File No. 12, Cty Council Minutes, pp. 21-22). There were also complaints about litter. Councilwoman Carol Berz expressed frustration at the hearing because Plaintiff, like other applicants, had failed to do her "due diligence" when she purchased the Norcross Property at the foreclosure sale without taking the time to investigate whether the property had lost grandfathered protection for its nonconforming use (*id.* at 23). The City Council denied Plaintiff's application.

---

[8] Councilman Manny Rico may also have been with Plaintiff in the month before the City Council hearing on Plaintiff's Special Exceptions Permit. *See* Court File 12, Benson Depo., p. 108.

A brief background on the history and use of the Special Exceptions Permit is also relevant in this case. Since the creation of the Special Exceptions Permit for a two-family dwelling in the R-1 Residential Zone in 2007, there have been sixteen applicants. Only three applications, including Plaintiff's, have been approved by the RPA and the Planning Commission. Of these three, the City Council has only approved a Special Exceptions Permit for one applicant: the property owner of 1507 Kirby ("Kirby Property") in Chattanooga, Tennessee. The City Council had considered the Kirby Property for rezoning before the Special Exceptions Permit existed; once that Permit was enacted, the rezoning application was withdrawn. The Kirby Property was the first property considered by the City Council for a Special Exceptions Permit.

The properties and application process for 1507 Kirby and 4317 Norcross differ in a number of ways. First, the Kirby Property is a duplex; the Norcross Property is a triplex. Second, while the property owner at the Kirby Property was renovating the duplex at the time of the Special Exceptions Application (Court File No. 12, Haynes Depo., p. 24) in order to make the Kirby Property look "like a very pleasant surrounding" and "an acceptable R-1 situation" (Court File No. 12, Benson Depo., p. 16), Plaintiff made no indication she planned to undertake any renovations or remodeling of the Norcross property (Court File No. 12, Zhang Depo., p. 28-29).[9] Third, no violations of City Code or complaints from neighbors were recorded in connection with the Kirby Property (Court File No. 12, Benson Depo., p. 16), whereas, as noted, a number of violations and complaints existed regarding the Norcross Property. Indeed, while neighbors on Norcross Road opposed Plaintiff's application, the "whole neighborhood" supported granting a Special Exceptions

---

[9] In the pleadings, Plaintiff contends a similarity between her property and the Kirby Property is the fact "Plaintiff made extensive investment in improvements in her property" (Court File 17, p. 4). This contention, however, finds no support in the evidence submitted by the parties.

6

Permit for the Kirby Property (Court File No. 12, Benson Depo., p. 16; *id.* at Haynes Depo., p. 50; *id.* at Robinson Depo., p. 32). Finally, while City Council members believed granting a Special Exceptions Permit at the Kirby Property would increase the economic value of surrounding properties–and not granting the Permit may have hurt the neighborhood financially (Court File No. 12, Benson Depo., p. 17), there is no indication in the record of a similar effect for the Norcross Property if Plaintiff obtained a Special Exceptions Permit.

**B. Procedural History**

After the City Council denied Plaintiff's application for a Special Exceptions Permit, Plaintiff filed suit in the Chancery Court for Hamilton County in July 2010. Plaintiff alleged the City Council's denial of her Special Exceptions Permit violated two provisions of the Tennessee Constitution and the Equal Protection Clause in the Fourteenth Amendment of the United States Constitution. Plaintiff also sought a declaratory judgment under Tennessee state law holding the City Council's denial of the Permit violated Plaintiff's state and federal rights. In addition, Plaintiff moved the Chancery Court to find, under the Tennessee *writ of certiorari* mechanism, the City Council abused its discretion and acted arbitrarily, capriciously, and illegally when it denied Plaintiff's Special Exceptions Permit. In this lawsuit, Plaintiff asks the Court to grant her a Special Exceptions Permit and award her other damages.

The City removed the case to this Court in August 2010. After completing discovery in June 2011, both parties moved for summary judgment in July 2011.

**II.    STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as

7

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III. ANALYSIS**

8

### A. Equal Protection Claim

Plaintiff contends the City violated her right to the equal protection of the laws under the Fourteenth Amendment of the U.S. Constitution when the City Council denied her application for a Special Exceptions Permit for a two-family dwelling in the R-1 Residential Zone.[10] Specifically, Plaintiff alleges the City treated her–and other applicants–for the Special Exceptions Permit differently than the property owner of the Kirby Property, and claims the City had no rational basis for such disparate treatment. The City argues Plaintiff was not situated similarly to the property owner of the Kirby Property. The City also asserts the City Council had a rational basis for denying Plaintiff's application.

The Equal Protection Clause prohibits a state from making distinctions that "burden a fundamental right; 2) target a suspect class; or 3) intentionally treat one individual differently from others similarly situated without any rational basis." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. Appx 826, 836 (6th Cir. 2009). The third approach is known as the "class of one" theory. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on a "class of one" claim, a plaintiff must first establish the government treated similarly situated persons differently. *Braun v. Ann Arbor Charter Twp.* 519 F.3d 564, 574 (6th Cir. 2008). If a plaintiff demonstrates it was treated differently than similarly situated persons, the plaintiff must then show the government had

---

[10] In the complaint, Plaintiff alleges both a violation of the Equal Protection Clause (Court File No. 1, Cmplt, ¶¶ 36-41) and a violation of the Equal Protection Clause under 42 U.S.C. § 1983 (*id.* at ¶¶ 42-43), which creates liability for deprivation of rights secured by the "Constitution and laws" of the United States. Plaintiff makes no claim under any Constitutional or federal statutory provision other than the Equal Protection Clause–and indeed explicitly disclaims any action under the Due Process clause. Court File No. 18, p. 1 ("Simply put, Plaintiff is not alleging lack of process; to the contrary, in this case Defendant subjected Plaintiff to *too much process*.") (emphasis in original). Accordingly, the only federal claim before the Court in this case is Plaintiff's Equal Protection challenge.

no rational basis for this different treatment. *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). The Court will analyze each element of the "class of one" theory, on which Plaintiff relies, in turn.

### 1. Similarly Situated

To satisfy the threshold inquiry in a "class of one" challenge under the Equal Protection Clause, a plaintiff must "allege that it and other individuals who were treated differently were similarly situated in all material respects." *Taylor Acquisitions,* 313 Fed.Appx. at 836; *cf. Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (noting that to succeed on the "similarly-situated" prong of the "class of one" theory, "plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves").[11] Although such a fact-bound inquiry is often appropriate for jury consideration, the First Circuit, disposing of an Equal Protection "class of one" challenge on summary judgment, observed that "[t]he 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Olech*, 528 U.S. at 565) (Breyer, J., concurring).

A particularly important aspect of the "similarly situated" requirement in the land-use context is timing. "Courts must be sensitive to the possibility that differential treatment– especially differential treatment following a time lag–may indicate a change in policy rather than intent to discriminate. Consequently, the most reliable comparisons are likely to be from roughly the same time frame.'" *Taylor Acquisitions*, 313 Fed.Appx. at 836-37 (quoting *Cordi-Allen*, 494 F.3d at 253).

---

[11] In this case, Plaintiff asserts she was treated differently than other person, the property owner of 1507 Kirby.

In *Taylor Acquisitions*, the Sixth Circuit found the "similarly situated" prong had not been satisfied where the city council that denied the plaintiff's development plan consisted of different members, with different priorities, than the city council that had approved the plaintiff's plan earlier the same year.

Here, Plaintiff alleges three respects in which she is similarly situated to the property owner of the Kirby Property: "(1) the Planning Commission and Staff determined her Special Permit met all the conditions as stated in the ordinance[;] (2) Plaintiff sought relief under the ordinance to allow her property to be used as a duplex; [and] (3) Plaintiff made extensive investment in improvements in her property" (Court File No. 17, pp. 3-4). Plaintiff further contends despite these similarities, she–along other applicants seeking the Special Exceptions Permit[12]–was treated differently than the property owner of the Kirby Property whose Special Exceptions Permit application was granted. Defendant argues, in essence, these alleged similarities are not material, and asserts the dissimilarities between 4317 Norcross and 5107 Kirby far outweigh any similarities.

Taking all facts in a light most favorable to the non-moving Plaintiff, the "similarly situated" element is a close call, but tilts in favor of the City. Plaintiff is certainly correct that both she and the property owner of the Kirby Property had applications approved by the RPA and Planning Commission before those applications came before the City Council. Plaintiff is additionally correct that both she and the property owner of the Kirby Property sought relief under the Special Exceptions Permit provided under City Code § 38-524. Plaintiff's final alleged ground of

---

[12] The possible inclusion of more than one person in a "class of one" Equal Protection challenge is not fatal to that challenge. *See Olech*, 528 U.S. at 564, n.* ("Whether the complaint alleges a class of one or of five is of no consequence because we conclude that the number of individuals in a class is immaterial for equal protection analysis.").

11

similarity–the Norcross Property and the Kirby Property benefitted from significant investment in the run-up to the application process–is less clear from the record. In her deposition, Plaintiff indicated she had no intention to renovate, upgrade, or remodel the Norcross Property. *See* Court File 12, Zhang Depo., p. 28-29). Plaintiff may have already invested significantly in the Norcross Property; if so, the evidence before the Court does not establish this allegation.

Plaintiff cannot satisfy the "similarly-situated" requirement for three reasons. First, even assuming Plaintiff has conclusively established all three grounds of alleged similarity, these grounds alone do not show that she and the property owner of the Kirby Property were similarly situated "in all material respects." *See Taylor Acquisitions,* 313 Fed.Appx. at 836. Plaintiff does not explain why these three grounds are relevant or material, and the Court fails to comprehend Plaintiff's rationale. Second, the time lag between the application for the Kirby Property and Plaintiff's application was almost two and a half years, a time in which the membership and policies of the City Council almost certainly changed. *Cf. id.* at 836-37. Finally, a number of differences between the Norcross Property and 5107 Kirby are evident. The former, a triplex the owner does not appear prepared to renovate, has experienced problems with litter, drug activity, and unleashed dogs, all culminating in significant opposition to the Permit application from the surrounding neighbors concerned about a decrease in the property values in the community. The latter, by contrast, was a duplex that encountered no opposition, was being renovated during the Permit application's pendency, and was considered a boon for the neighborhood.

Because the Court concludes a fair-minded jury could not find the Norcross Property and the Kirby Property were similarly situated, summary judgment for the City is appropriate. Thus, the Court's inquiry is ostensibly complete. *See Braun*, 519 F.3d at 575 ("[W]e need not apply the

12

rational basis test because the plaintiffs have failed to demonstrate that the [Defendant] treated him differently from similarly situated individuals."). Because, however, the Sixth Circuit has also suggested the "similarly situated" requirement is in fact inextricably linked to the rational basis test, *see TriHealth*, 430 f.3d at 790 ("Materiality is an integral element of the rational basis inquiry. Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational. Conversely, disparate treatment of persons is reasonably justified if they are dissimilar in some material respect. Hence, we turn to the rational basis analysis, the linchpin of the test."),[13] the Court now considers whether Plaintiff has satisfied the second element of her "class of one" Equal Protection claim.

### 2. Rational Basis

After a plaintiff has established she has been intentionally treated differently from other similarly situated persons, she must then demonstrate there is no rational basis for this difference in treatment. *Olech*, 528 U.S. at 564. Two avenues lie open to a "class of one" plaintiff to prove no rational basis for the government action existed: "either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth*, 430 F.3d at 788. Here, Plaintiff makes no claim animus or ill-will drove the City Council's decision to reject her application for a Special Exceptions Permit. Thus, the City Council's decision "must be sustained if *any* conceivable basis rationally supports it." *Id.* at 790 (emphasis in original). Moreover, the City "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and 'may be based on rational

---

[13] In a recent "class of one" challenge, the Sixth Circuit found the plaintiff had not established the "similarly situated" requirement but nonetheless engaged in rational basis analysis. *See Taylor Acquisitions*, 313 Fed.Appx at 837.

13

speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Federal Communications Commission v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)).

Plaintiff offers three arguments explaining why the City Council's decision fails the rational basis test. First, Plaintiff contends "[t]here can be no legitimate government interest in treating similar applicants, with similar properties, seeking identical relief under the same Special Permit, differently" (Court File No. 15, p. 6). Second, Plaintiff argues City Council members improperly considered aspects of Plaintiff's application–in particular, whether the application enjoyed neighborhood support–not enumerated in the City Code. Finally, Plaintiff takes issue with the fact her application was subjected to public comment, review, and discussion before the City Council, while the property owner of the Kirby Property was not.

These arguments fall well short of Plaintiff's burden of "negativing every conceivable basis which might support the government action." *TriHealth*, 430 F.3d at 788. Plaintiff's first and third arguments are little more than bare allegations the City could have no justification for treating similar applicants differently. Even assuming the applicants are as identical as Plaintiff suggests–a contention the record does not support, the City could have a number of legitimate justifications for different treatment: budgetary concerns, changes to policy, a desire to keep the exception limited, and so on. Each of these justifications–and others–provides a conceivable and rational basis for the City Council's decision to deny Plaintiff's application.

Plaintiff's second argument also fails. This argument rests on two flawed premises, namely, that the City Council is limited only to considering those factors listed in the City Code and that if those factors are found to exist–which neither the City Council nor the Planning Commission

14

found[14]–the City Council is required to grant a Special Exceptions Permit. Nothing in City Code § 38-524(5) supports either claim. Instead, City Code § 38-524(5) grants the City Council *discretionary* authority to grant a Special Exceptions Permit. Thus, even if an applicant met every factor listed in § 38-524(5), the City Council could still use its discretion to not grant an application. More fatal to Plaintiff's argument is the basic point that the factors in § 38-524(5) are not an exhaustive list of what City Council members are permitted to consider when deciding whether to grant a Permit. If, as in this case, City Council members take the extra step to more fully investigate a Permit application, it defies sense–and is not legally mandated–to hamstring the City Council's thorough consideration of an application. In brief, City Code § 38-524(5) provides a floor for what the City Council must consider, not a ceiling on what it can consider.

Moreover, although not required to do so, the City offers, in the form of deposition testimony, numerous explanations of the City Council's rationale in rejecting Plaintiff's Permit application: concerns about neighborhood opposition to Plaintiff's application, concerns granting the application would depress property values in the neighborhood, the view that the Norcross Property "stood out like a scab" (Court File No. 12, Benson Depo., p. 138) and thus was inappropriate for a neighborhood zoned for single-family residential homes. Although Plaintiff may disagree with these views on policy grounds, the views themselves are surely reasonable and appropriate–and easily pass muster under the rational basis test. *Cf. Taylor Acquisitions*, 313 Fed.Appx. at 837.

Because Plaintiff cannot show the City Council's decision to deny her application for a

---

[14] The Planning Commission found the threshold requirements under City Code § 38-524(3) met, but did not make a specific finding under City Code § 38-524(5) on whether the Special Exceptions Permit should be granted.

Special Exceptions Permit lacked any conceivable rational basis, summary judgment on her "class of one" Equal Protection claim is proper.

### B. State Law Claims

Plaintiffs also asserts various state law claims against the City. Plaintiff alleges two violations of the Tennessee Constitution, asks the Court to issue a declaratory judgment under state law finding the City Council's conduct unlawful, and requests the Court grant a *writ of certiorari* under state law to find the City's action arbitrary, capricious, and illegal.

As state law claims brought in a federal-question case, the claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In making this discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

When all federal claims have been dismissed, the preferred disposition of state law claims is dismissal, or, where a case has come into federal court on removal, remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp.*

16

*Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). A federal district court should only exercise its discretion to retain supplemental jurisdiction after dismissing federal claims under limited circumstances, which frequently involve some degree of forum manipulation. *See Carnegie-Mellon*, 484 U.S. at 357. There is no indication of manipulative tactics in this case, and no other compelling reason for the Court to retain supplemental jurisdiction over Plaintiff's state law claims. Accordingly, remand to the Chancery Court for Hamilton County is appropriate.

**IV. CONCLUSION**

For the reasons discussed above, the Court will **GRANT IN PART** Defendant's motion for summary judgment (Court File No. 12), will **DENY** Plaintiff's motion for summary judgment (Court File No. 13), and will **REMAND** Plaintiff's state law claims to the Chancery Court for Hamilton County. There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**